IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:20-bk-03015 |
| CONNIE CLARK HARRISON, ) | Chapter 11 |
| ) | Judge Marian F. Harrison |
| Debtor. ) | |

## DISCLOSURE STATEMENT TO ACCOMPANY
## DEBTOR'S PLAN OF REORGANIZATION DATED AUGUST 7, 2020

The Debtor, Connie Clark Harrison ("the "Debtor"), submits this Disclosure Statement (the "Disclosure Statement") for use in soliciting acceptance of her Plan of Reorganization (the "Plan") dated August 7, 2020. A copy of the Plan is submitted herewith. The purpose of this Disclosure Statement is to provide adequate information to creditors and parties in interest (hereinafter, "Claimants") in the above Chapter 11 case, in order to enable Claimants to make an informed decision in exercising their rights under the Bankruptcy Code. All capitalized terms not specifically defined herein shall have the definition ascribed to them in the Plan, accompanied herewith.

## INTRODUCTION

On June 19, 2020, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the filing of the petition, the Debtor has remained in possession of her property and operated her affairs as Debtor-in-Possession. No Trustee has been appointed, nor has a committee of unsecured creditors been appointed.

This Disclosure Statement is intended to contain "adequate information" (as defined in 11 U.S.C. § 1125(a)) of a kind, and in sufficient detail, that would enable a hypothetical investor typical of the holders of Claims or Interests in the case to make an informed judgment in voting to accept or reject the Plan. Approval of this Disclosure Statement by the Court does not constitute a recommendation to accept or reject the Plan.

Article II of the Plan contains definitions of certain terms. Where those terms are capitalized in this Disclosure Statement, they have the meaning set forth in Article II of the Plan.

## DISCLAIMER

No representations concerning the Debtor, other than as set forth in this Disclosure Statement, are authorized by the Debtor. Any representations or inducements made to secure your acceptance that are other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision.

1

The information contained in this Disclosure Statement has been primarily derived from the Debtor. The Debtor believes the information to be correct; however, the information has not been independently verified in every instance, nor has it been subjected to a certified audit.

## TAX CONSEQUENCES

Section 1125(a)(1) of the Bankruptcy Code requires the Debtor to include a discussion of any potential material federal tax consequences of the Plan. Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their accountants, attorneys, or advisors. A tax consequence of the Chapter 11 filing is that the Debtor is entitled to exclude from gross income any cancellation of debt resulting from this Plan. The Debtor is not aware of any potential material federal tax consequences to it or a hypothetical investor.

## THE DEBTOR

### A. Profile of the Debtor

The Debtor is an individual residing at 1529-1531 Franklin Road, Brentwood, Williamson County, Tennessee 37027. The Debtor is not currently employed. Her income comes exclusively from Social Security and from gifts and other voluntary payments from friends. The Debtor's primary asset is her primary residence (the "Residence")—a 9.4-acre parcel of property located on Franklin Road.

This bankruptcy arises following the Debtor's divorce in 2008 and her inability to address the substantial debt incurred by her ex-husband. She owns the Residence, but it remains encumbered by two mortgages. The Debtor's limited income has prevented her from satisfying the mortgage obligations on the terms of the related notes and deeds of trust. However, she retains substantial equity in the Residence. Prior to filing this case, the Debtor attempted to sell either the Residence or a portion of the property upon which the Residence sits to satisfy her debts in full. She had a contract with a buyer for a portion of this property in early 2020, but this contract fell through due to the inability of the purchaser to obtain financing. Before the Debtor could relist the Residence and find a suitable buyer, the second position mortgagee on the Residence commenced foreclosure proceedings due to non-payment. This pending foreclosure prompted this bankruptcy filing.

Through this bankruptcy, the Debtor intends to market and sell the Residence on the terms provided herein to allow her to satisfy all of her creditors, secured and unsecured, in full, while retaining her substantial equity in the Residence.

### B. Post-Bankruptcy

The Debtor filed a *Motion for Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for Debtor* (Docket No. 8) on June 23, 2020. This Court entered its *Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for*

2

*Debtor* (Docket No. 19) on July 17, 2020. Similarly, the Debtor has filed a motion to employ Foundry Commercial as her real estate agent to assist in the sale of the Residence as contemplated below (Docket No. 21). The Debtor's Initial Debtor Interview occurred on June 30, 2020, and the Debtor's Meeting of Creditors occurred on July 23, 2020. The Debtor now submits this Disclosure Statement to her creditors, other interested parties in this case, and the Court for approval.

### C. Assets of the Debtor

A detailed listing of the Debtor's assets and liabilities is contained in her Schedules of Assets and Liabilities (*see* Docket No. 1). Specifically, the Debtor's primary assets consist of the following:

1. <u>Real Property</u>. The Debtor owns the Residence located at 1529-1531 Franklin Road, Brentwood, Williamson County, Tennessee 37027. The estimated market value based on its current tax assessed value is $942,400.00, though the Debtor believes it could be worth more than this if properly marketed and sold. The Residence is encumbered by a first mortgage in the amount of approximately $74,436.86 as of the Petition Date. It is also encumbered by a second mortgage in the amount of approximately $443,288.86 as of the Petition Date. A portion of the remaining equity remains subject to the Debtor's exemptions as set forth in Schedule C of her Statements and Schedules.

2. <u>Vehicles</u>. The Debtor owns a 2007 Infinity G35 with approximately 172,235 miles. The estimated market value of this vehicle, based on Kelly Blue Book valuation, is $2,217.00. The value of this vehicle is subject to the Debtor's exemptions set forth in Schedule C of her Statements and Schedules.

3. <u>Miscellaneous Personal Property</u>. The Debtor owns certain miscellaneous personal property as set forth in Schedule A/B of her filed Statements and Schedules (Doc. No. 1). This includes miscellaneous household goods, electronics, art, jewelry, clothing, sporting goods, and tools. The estimated liquidation value of these assets is approximately $6,650.00, though the estate's interest in these assets is subject to the Debtor's exemptions set forth in Schedule C of her Statements and Schedules.

4. <u>Cash</u>. The Debtor owns an interest in cash. As of the date of filing, the Debtor had approximately $500.00 in cash and $398.59 in a checking account with U.S. Bank. The estate's interest in these assets is subject to the Debtor's exemptions set forth in Schedule C of her Statements and Schedules.

5. <u>Reservation of Causes of Action / Authority to Pursue and Settle</u>.

**The Plan retains and reserves all causes of action, including avoidance actions, for pursuit or abandonment by the Debtor after Confirmation, within her sole discretion.**

As noted above, the Plan retains and reserves for pursuit by the Debtor all avoidance actions arising under Chapter 5 of the Bankruptcy Code. The terms of the Plan give the Debtor the widest

possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference pursuant to Section 547, voidable transfer claims pursuant to Section 548, or any other avoidance action.

All creditors identified in the Debtor's Statement of Financial Affairs filed in this case as having received payments from the Debtor in the 90 days (or one year if an insider) preceding the Petition Date, may be the defendant of an avoidance action or other cause of action if the total payments to them exceeds $600.00. Thus, they are the potential defendants of an avoidance action pursuant to Section 547 of the Bankruptcy Code.

The persons or entities identified in the Debtor's Statement of Financial Affairs filed in this case as having received transfers outside the ordinary course of business or financial affairs of the Debtor within two years of the commencement of this Bankruptcy Case may be the defendant in an avoidance action or other cause of action. Thus, they are the potential defendants in an avoidance action pursuant to Section 548 of the Bankruptcy Code.

The identified claims in the Statement of Financial Affairs are not intended to be a complete list, and the Debtor may add or amend the identified claims after confirmation. The Plan reserves and retains any and all other causes of action regardless of whether they are specifically identified or referred to herein. Nothing contained in this Disclosure Statement or in the Plan shall have any preclusive effect against the Debtor (whether by waiver, admission, estoppel, or otherwise) in any cause of action or proceeding that may exist or occur in the future. Each creditor and party in interest is advised to review the Plan, the Debtor's filed Schedules and Statement of Financial Affairs, and the creditor's prior dealings with the Debtor, to determine whether any cause of action or avoidance action may be pursued against it.

## **DEBTOR'S LIABILITIES**

### A. **Post-Petition Administrative Expense Claims**

Administrative expense claims include the actual, necessary costs and expenses associated with preserving the Debtor's bankruptcy estate. These claims are more fully set forth in 11 U.S.C. § 503 and are accorded priority under 11 U.S.C. § 507. The administrative claims in this case are as follows:

1. <u>United States Trustee Quarterly Fees</u>. The Debtor is current, and will remain current, with payments to the United States Trustee through the entry of a final decree closing the bankruptcy case or other order administratively closing the bankruptcy case following substantial consummation of the Plan.

2. <u>Payments to Professionals</u>. The Debtor shall remain current with payments to any and all professionals employed during this bankruptcy case. The Debtor filed a *Motion for Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for Debtor* (Docket No. 8) on June 23, 2020. This Court entered its *Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for Debtor* (Docket No. 19) on July 17, 2020.

4

B.  **Secured Claims**

*IN THE EVENT ANY OF THE CLAIMANTS LISTED IN THIS SECTION B FILE A PROOF OF CLAIM STATING THAT NO PART OF THE CLAIM IS SECURED, OR UPON AN OBJECTION TO A SECURED CLAIM WHEREIN AN ORDER OF THE COURT DETERMINES A CLAIM TO BE UNSECURED, THEN SUCH CLAIM SHALL BE DEEMED ENTIRELY UNSECURED AND TREATED AS SUCH PURSUANT TO THE PLAN*

a.  <u>Select Portfolio Servicing</u>.  Select Portfolio Servicing ("SPS") holds secured claim against the Debtor in the amount of **$74,436.86**, plus allowable post-petition fees and interest, secured by a first priority lien on the Residence, less any amounts received by SPS under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder (the "SPS Claim").  The SPS Claim arises from a promissory note and deed of trust in favor of SPS and recorded with the Williamson County, Tennessee Register of Deeds (the "Register's Office") in Book 2757, Page 626, on March 19, 2003 as set forth in the documents attached to SPS's proof of claim filed in this case [*See* Claim No. 7].  The Debtor intends to pay the SPS Claim in full pursuant to the Plan and further has no intention of impairing the collateral securing repayment of the obligations arising from the SPS Claim.

b.  <u>Tristar Bank</u>.  Tristar Bank ("Tristar") holds a secured claim in the amount of **$443,288.86**, plus allowable post-petition fees and interest, secured by a second priority lien on the Residence, less any amounts received by Tristar under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder (the "Tristar Claim").  The Tristar Claim arises from a home equity line of credit and related promissory note and deed of trust originally in favor of Community South Bank pursuant to that certain Home Equity Line of Credit – Open-End Deed of Trust recorded with the Register's Office as Instrument No. 08004238 on February 1, 2008, which was subsequently assigned to Tristar and modified by the parties pursuant to the documents attached to Tristar's proof of claim filed in this case. [*See* Claim No. 3].  The Debtor intends to pay the Tristar Claim in full pursuant to the Plan and further has no intention of impairing the collateral securing repayment of the obligations arising from the Tristar Claim.

C.  **General Unsecured Claims**

The Debtor's unsecured debt, as reflected in the Debtor's Schedules and through proofs of claims filed to date, is shown below.  The Court set a general bar date for filing proofs of claims of September 18, 2020 and a governmental bar date for filing proofs of claims of January 15, 2021 (the "Bar Date").

a.  <u>Allowed Unsecured Claims</u>.  The Debtor sets forth the unsecured claims in this case to be deemed Allowed Unsecured Claims and to be paid in the manner provided below and in the Plan.

| Name of Creditor | Amount of Claim[1] | Source of Amount |
|---|---|---|
| Internal Revenue Service | $6,192.52 | ECF Claim No. 2 (Claim based on estimated tax liability following unfiled returns) |
| Discover Student Loans | $3,837.60 | ECF Claim No. 4 |
| U.S. Bank National Association | $1,646.38 | ECF Claim No. 5 |
| Puryear & Noonan, CPAs | $14,000.00 | Debtor's Schedule F (Allowed claim amount based on agreement of the creditor) |
| IC Systems Collections | $122.00 | Debtor's Schedule F |
| Quest Diagnostics | $715.36 | Debtor's Schedule F |

    b.  <u>Unsecured Claims to be Deemed Disallowed</u>.  The Debtor identifies the following general unsecured claims for which a proof of claim was filed, but for which the Debtor objects to the payment of such claim for the reasons set forth below.  The below identified claims shall not be deemed Allowed Unsecured Claims.  Such claims shall be deemed disallowed in full, and therefore shall not be paid under the Debtor's Plan.

| Name of Creditor | Amount of Claim | Source of Amount | Basis for Dispute |
|---|---|---|---|
| Cavalry SPV I, LLC, as assignee of Citibank N.A. | $38,956.79 | ECF Claim No. 1 | Claim is time-barred (Claim No. 1 reflects date of last payment as 12/31/2012) (*See* Docket No. 28) |
| American Express National Bank | $30,472.91 | ECF Claim No. 6 | Claim is time-barred (Claim No. 6 reflects date of last payment as 07/2012) (*See* Docket No. 29) |

---

[1] The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amounts listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

6

# LIQUIDATION ANALYSIS

For the Plan to be approved by the Court, a determination must be made that the Plan will provide to each creditor an amount, as of the Effective Date, that is not less than the value of the property that each creditor would receive or retain if all assets of the Debtor were sold and the proceeds were distributed under Chapter 7 of the Bankruptcy Code.

The estimated dollar amount that would be generated from the forced liquidation of the Debtor's assets (the "Liquidation Proceeds") would consist of the proceeds from the sale of all non-exempt assets of the Debtor and recoveries on any actions against other parties. The Liquidation Proceeds would then be reduced by the cost of the liquidation. The following is a review of the assets of the Debtor and the amounts a Chapter 7 trustee would realize upon a liquidation of those assets.

The most significant asset of the Debtor is the Residence. The remaining assets of the Debtor are either of too little value to justify sale or are otherwise fully exempted. If there was a forced liquidation of this property, it is anticipated that a Chapter 7 Trustee may sell the property as follows:

**Current Assets**

**Real Property Owned by Debtor**

| | | |
|---|---|---:|
| 1529-1531 Franklin Road, Brentwood, TN 37027 | *Value:* | $942,400.00 |
| | less 6% realtor | -$56,544.00 |
| | less est. closing costs | -$5,000.00 |
| | less mortgage payoff | -$74,436.86 |
| | less 2nd mortgage payoff | -$443,288.86 |
| | less homestead exemption | -$5,000.00 |
| | *SUBTOTAL NET PROCEEDS:* | $358,130.28 |
| | less Chapter 7 Trustee Fee (25% up to $5,000) | -$21,156.51 |
| | less Chapter 7 Trustee Fee (10% from $5,000 up to $50,000) | |
| | less Chapter 7 Trustee Fee (5% from $50,000 up to $1,000,000) | |
| | Liquidation Value = | **$336,973.77** |

**Personal Property of the Debtor**

| | | |
|---|---|---:|
| 2007 Infiniti G35 | Value | $2,217.00 |
| | Less Claimed Exemption | -$2,217.00 |
| | Liquidation Value = | $0.00 |

7

| | | | |
|---|---|---|---|
| Miscellaneous Personal Property | Value | | $6,650.00 |
| | Less Claimed Exemption | | -$6,650.00 |
| | Liquidation Value = | | $0.00 |
| | | | |
| Cash and Cash Equivalents | Value | | $898.59 |
| | Less Claimed Exemption | | -$898.59 |
| | Liquidation Value = | | $0.00 |
| | | | |
| Balance Available to Pay Unsecured Claims in a Chapter 7 Liquidation | | | $336,973.77 |
| | | | |
| Total Amount Proposed to be Paid to Allowed Unsecured Claims (including unimpaired IRS Claim) (Payment in full) | | | $26,513.86 |

The Debtor is unaware of any actions a Chapter 7 trustee could take against other parties to obtain funds for the estate. Therefore, the Liquidation Proceeds would total approximately $336,973.77. Here, the proposed distribution to Allowed Unsecured Claims is payment in full on such Allowed Unsecured Claims. Accordingly, the Debtor's Plan offers creditors a recovery equal to that which they would receive from liquidation under Chapter 7 of the Bankruptcy Code.

## SUMMARY OF PLAN

The Debtor sets forth the treatment of her creditors and the manner in which payment will be made to satisfy her creditor's claims below. The Debtor intends to satisfy all claims in full through the marketing and sale of the Residence, which is valued at a price sufficient to satisfy all allowed claims, secured and unsecured, in a lump sum payment following closing.

The manner of satisfying the Debtor's creditors and their claims is as follows. The Debtor will engage in the marketing of the Residence for sale. The Debtor has engaged Foundry Commercial ("Foundry") to assist in the marketing and sale of the Residence and has filed a motion seeking Court approval of Foundry's employment. [Docket No. 21]. The Debtor shall market and attempt to sell the Residence from the date of entry of an order approving Foundry's employment through the date that is nine (9) months following the Effective Date of the Plan (the "Marketing Period"). If a contract for sale of the Residence is obtained prior to the expiration of the Marketing Period, the Debtor shall have until the date that is ninety (90) days from the binding agreement

date in any contract for the sale of the Residence to close the sale of the Residence (the "Closing Deadline"). In the event the Debtor does not procure a contract for the sale of the Residence on or before the expiration of the Marketing Period or does not close on such contract by the Closing Deadline, the Debtor shall employ McLemore Auction Company or such other auction company as the Debtor may see fit in the Debtor's sole and exclusive discretion (the "Liquidating Agent") to liquidate the Residence and provide for payment of the claims as set forth below. The Liquidating Agent shall be given ninety (90) days from the later of the expiration of the Marketing Period (if no binding contract for the Residence is executed prior thereto) or the Closing Deadline (if a binding contract is executed but cannot be closed prior to the expiration thereof) (the "Liquidation Sale Deadline") to sell the Residence and provide for payment in full of all allowed claims in this case. In the event the Liquidating Agent has not sold the Residence on or before the Liquidation Sale Deadline in a manner to allow payment in full of all allowed claims, the Debtor shall be deemed in default of the Plan, and her creditors shall be free to exercise such rights against the Debtor as may be authorized under applicable non-bankruptcy law, subject to the provisions of the Plan governing default.

A. <u>Retention of Assets</u>

The remaining assets of the Debtor will continue to be owned, managed, and controlled by the Debtor.

B. <u>Payment of Claims</u>

1. <u>Unimpaired Claims</u>. The claims below are unimpaired and shall be treated as follows:

a. *Administrative Claims.* Post-petition services provided by professionals are not impaired. Post-petition services provided by professionals will be paid in full at the later of (i) the time that the expense has been approved by the Court, (ii) upon such other terms as may be agreed upon by the holder of the claim and the Debtor, (iii) the Effective Date, or (iv) directly following the sale of the Residence as contemplated herein, to be reflected on the appropriate settlement statement related to such sale. In addition, all fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, converted to another chapter of the Bankruptcy Code, or a final decree or other order administratively closing this case following substantial consummation of the Plan is entered by the Court.

b. *Unclassified Priority Claims.*

i. <u>Internal Revenue Service</u>. The priority claim of the Internal Revenue Service allowed under § 507(a)(8) (the "IRS Claim") shall be deemed allowed in the amount of $6,192.52, the amount set forth in the proof of claim supporting the IRS Claim (Claim No. 2). The IRS Claim shall be paid in full in a lump sum payment of the full amount of the IRS Claim following the closing upon the sale of the Residence as contemplated above.

2. *Impaired Claims*. The below classes of claims are impaired and will be classified and treated under the Plan as follows:

| Class No. | Holder of Claim or Interest | Plan Treatment |
|---|---|---|
| 1 | Select Portfolio Servicing | The SPS Claim shall be allowed in the amount of $74,436.86, plus the contract rate of interest from the Petition Date through the date of sale of the Residence as described above, less any Adequate Protection Payments received prior to the Effective Date. SPS will retain its lien on the Residence in the same manner and priority as existed prior to the Petition Date and will be paid in full upon the sale of the Residence as contemplated above. The Debtor shall retain and keep current all casualty insurance coverage on the Property as may be required under any prepetition deed of trust securing the SPS Claim. |
| 2 | Tristar Bank | The Tristar Claim shall be allowed in the amount of $443,288.86, plus the contract rate of interest from the Petition Date through the date of sale of the Residence as described above, less any Adequate Protection Payments received prior to the Effective Date. Tristar will retain its lien on the Residence in the same manner and priority as existed prior to the Petition Date and will be paid in full upon the sale of the Residence as contemplated above. The Debtor shall retain and keep current all casualty insurance coverage on the Property as may be required under any prepetition deed of trust securing the Tristar Claim. |
| 3 | General Unsecured Claims | This class shall consist of the Allowed Unsecured Claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, Claims arising out of the rejection of any executory contact or unexpired lease, each Allowed Claim secured by a lien on property in which the Debtor has an interest to the extent that such Claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such Claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such Claim exceeds the amount which such Claim may be afforded priority thereunder. As set forth above, the Debtor asserts that the total amount of Allowed Unsecured Claims to be paid in this case, not including the unimpaired claim of the Internal Revenue Service as set forth above, totals $20,321.34. All Class 3 Claimants will be paid in full within 30 days of the sale of the Residence. |

| 4 | Equity Interests of the Debtor | The Debtor will retain all equity interests in the estate, including but not limited to her equity in the Residence following the sale contemplated herein. |

### C. Plan Default

Notwithstanding the provision of any lease or finance agreement that may survive the Confirmation of this Plan, an event of default as to any Claim shall exist if the Reorganized Debtor (i) fails to make monetary payment when due and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditor's claim for the value of the property, or (iii) disposes of the property securing the creditor's claim without either the consent of the creditor holding the Claim or the payment of the net sale proceeds to that creditor.

### D. Tax Consequences

There are no known negative tax consequences created by the Plan. *Creditors are advised to direct all questions regarding the tax consequences of the Plan to their respective tax advisor*.

### E. Executory Contracts

There are no known executory contracts or unexpired leases of the Debtor. To the extent there are any executory contracts of the Debtor, the Debtor hereby specifically rejects those contracts retroactively to the Petition Date.

### F. Discharge

Pursuant to 11 U.S.C. § 1141(d)(5), unless the Court orders otherwise, the Debtor will not get a discharge until all payments under the Plan have been completed. For the purposes of this section, the Plan states that the Debtor will have completed her obligations under the Plan if she is not in default under the Plan as of the date of the payment to the Class 3 Claimants. Notwithstanding the foregoing, the Debtor reserves the right to seek administrative closure of the case following substantial consummation of the Plan, subject to reopening following completion of all plan Payments to allow the Debtor to obtain a discharge.

### G. Implementation of the Plan

The Debtor will continue to employ professional real estate agents to actively market and sell the Residence to obtain funds for the Plan. The Debtor will seek the entry of a Final Decree as required under Bankruptcy Rule 3022 or an order administratively closing the case following the Effective Date and substantial consummation of the Plan. Prior to the entry of a Final Decree or order administratively closing the case, the Debtor shall submit reports and pay quarterly fees to the U.S. Trustee as required by law. Upon the completion of payments to the Class 3 Claims, the Debtor reserves the right to file a motion to reopen the case in order to obtain a discharge order pursuant to 11 U.S.C. § 1141(d)(5).

# CONFIRMATION REQUIREMENTS

To confirm the Plan, the Court must, after notice, hold a Confirmation Hearing. Any creditor may object to confirmation of the Plan and appear at the Confirmation Hearing to prosecute such objection. The requirements for confirmation of a Chapter 11 Plan are set forth in detail in 11 U.S.C. § 1129. The following is a summary of the more notable requirements:

A. Acceptance by Impaired Classes

Pursuant to 11 U.S.C. § 1129(a)(10), at least one class of impaired claimants must vote to accept the Plan. For a class to accept the Plan, the Plan must receive favorable votes from claimants within that class who hold at least two-thirds in dollar amount of the claims that vote and more than one-half in number of the claims that vote.

B. Manner of Voting.

In voting for or against the Plan, please use only the ballot sent to you with this Disclosure Statement. If a creditor has an Allowed Claim or Allowed Interest in more than one Class, such creditor may vote multiple ballots. Holders of Allowed Claims or Allowed Interests entitled to vote to accept or reject the Plan may vote by completing, dating, signing and transmitting the ballot to: Dunham Hildebrand, PLLC, 2416 21st Avenue South, Suite 303, Nashville, Tennessee 37212, Email: ned@dhnashville.com.

To be counted, a ballot must be received at the above address on or before the date and time set forth in the ballot. A ballot, once submitted, cannot be withdrawn or modified except as provided under the Bankruptcy Code.

C. Feasibility

Pursuant to 11 U.S.C. § 1129(a)(11), the Court is required to find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor. The Court must find that the Plan adequately addresses the needs for reorganization and that it is likely that the Reorganized Debtor will be able to perform pursuant to the Plan. A finding by the Court that the Plan meets these requirements is not a guarantee that the Plan will be fully performed.

The Debtor asserts that the Plan is feasible. The Debtor asserts that there is substantial equity in the Residence, and there will still be sufficient funds to pay all allowed claims in full upon the closing of the sale thereof as contemplated herein.

D. Liquidation Test

Pursuant to 11 U.S.C. § 1129(a)(7), and as discussed above, the Plan must pay to each class that has not accepted the Plan an amount determined as of the Effective Date that is not less than the amount a claimant within that nonaccepting class would receive or retain if the Debtor's assets

12

were liquidated under Chapter 7 of the Bankruptcy Code. The Debtor asserts that the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7).

E. Disposable Income

Pursuant to 11 U.S.C. § 1129(a)(15), if the holder of an Allowed Unsecured Claim objects to the confirmation of the Debtor's Plan, the Debtor must show to the Court that the Plan provides a distribution to unsecured creditors in an amount that is not less than the projected disposable income of the Debtor to be received during a five (5) year period beginning on the date that the first payment is due under the Plan. Since the Debtor does not have any disposable income, the Debtor asserts that the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(15).

F. "Cramdown" Provisions

Pursuant to 11 U.S.C. § 1129(b), if an impaired class does not vote to accept the Plan, as discussed in Paragraph A above, the Court may still confirm the Plan if the Court determines that the Plan treatment of the class of claims rejecting the Plan is fair and equitable and does not discriminate unfairly. The Debtor intends to invoke these "cramdown" provisions should any class of impaired claims fail to accept the Plan. The Debtor believes that the Plan is fair and equitable and does not discriminate unfairly.

## MISCELLANEOUS PROVISIONS

G. Legally Binding Effect

Confirmation of the Plan will bind the Debtor and all creditors and interest holders, whether or not they accept the Plan. The distributions of consideration provided for in the Plan will be in exchange for and in complete settlement and satisfaction of all Claims and Interests, including any Claim for interest after the Petition Date. On the Confirmation Date, all creditors shall be precluded from asserting any Claim against the Debtor or her property based upon any transaction or other activity of any kind that occurred prior to the Confirmation Date.

H. Modification of the Plan.

The Debtor may propose amendments to or modifications of the Plan at any time prior to the Confirmation Date provided that the amended Plan satisfies the requirements of the Code. If the circumstances warrant, after the Confirmation Date and before Substantial Consummation of the Plan, the Debtor may modify the Plan, provided that the Plan, as modified, meets the requirements of the Code, and the Court, after a hearing, confirms the Plan as modified. Unless, within the time fixed by the Court, a creditor changes its previous acceptance or rejection of the Plan, such previous election shall be deemed applicable to the amended Plan.

I. Plan Injunction.

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of Claims against the Debtor, or on account of claims released pursuant to the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the Allowed Amount of any Claims that arose prior to the Effective Date. Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims shall be permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under Section 502 of the Bankruptcy Code.

J. Post-Confirmation Jurisdiction.

The Court shall retain exclusive jurisdiction over this Chapter 11 case for the purpose of determining any matters pertaining to the Plan or the Confirmation Order, as well as determining all disputes, suits or controversies arising out of the Plan and its interpretation, enforcement or consummation. Persons reading this Disclosure Statement should refer to the Plan for a more detailed discussion of the Court's continuing jurisdiction over the Debtor and this case.

K. Post-Confirmation Reporting.

Pursuant to Local Rules of Court, the reorganized Debtor shall file with the Court, within 30 days following the Effective Date of the Plan, a report of the action taken and progress made toward Plan consummation. The Debtor shall also file such a report by March 15 and September 15 of each year of the Plan until the case is closed. These reports will be on file with the Clerk of the Bankruptcy Court, Customs House, 701 Broadway, Nashville, Tennessee 37203.

L. Hearing on Confirmation of the Plan.

The Court will set a hearing on Confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of holders of Claims and Interests and whether the other standards for Confirmation of the Plan have been satisfied. The hearing may be adjourned from time to time without further written notice other than an announcement in open Court.

DATED: August 7, 2020          Respectfully Submitted,

**CONNIE CLARK HARRISON**

/s/ Connie Clark Harrison
CONNIE CLARK HARRISON


/s/ Ned Hildebrand
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
2416 21ST Avenue South, Suite 303
Nashville, TN 37212
615.933.5851
ned@dhnashville.com
*Counsel for Connie Clark Harrison*